**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SEBASTIAN MIRALLES ACUÑA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2024-0657-DG |
| BRAZIL TOWER COMPANY LP, BRAZIL TOWER COMPANY ADVISORS LLC, BRAZIL TOWER COMPANY MANAGEMENT, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

**WHEREAS:**

A.    Plaintiff "is a Mexican financial professional invested in Brazil Tower Company, LP."[1]

B.    Defendant Brazil Tower Company, LP ("Brazil LP") is a "Delaware limited partnership setup to invest directly or through subsidiaries in building and operating telecommunications tower[s] in Brazil."[2]  The other Defendants are entities affiliated with Brazil LP.

---

[1] Verified Compl. Pursuant to Anti-Suit Prelim. Injunc. Against Initiation of Litig. Abroad ("Compl."), Dkt. 1 at 9.

[2] *Id.*

C. Plaintiff requests an anti-suit injunction. The complaint states that the need for the requested injunction first arose in 2023. In September of that year, Plaintiff began to investigate certain alleged legal issues concerning the operation of Brazil LP.[3]

D. In October 2023, Plaintiff "escalated the issue" by presenting it to the CFO of Brazil LP.[4] Plaintiff also reached out to nonparty Corporación Andina de Fomento ("CAF")—"the only shareholder that [Plaintiff] knew would have a right to be in the [Limited Partnership Advisory Committee]"—to discuss Plaintiff's concerns and a proposal to explore "joint legal action."[5]

E. In May 2024, "Plaintiff received an email" from Brazilian counsel to a Brazil Tower entity named Brazil Tower Cessão de Infra-Estruturas, S.A. ("Cessão").[6] The email included an attached "Extrajudicial Notification" that denies the allegations Plaintiff made regarding his raised issues. The Extrajudicial Notification requests that Plaintiff cease the dissemination of information Cessão believes to be false and immediately

---

[3] *See id.* ¶¶ 15–16. I decline to elaborate on Plaintiff's investigation and allegations because no actual findings have been made and Plaintiff concedes that he has not included a complete description of his concerns.

[4] *Id.* ¶ 17.

[5] *Id.* ¶ 4.

[6] *Id.* ¶ 5; *see also* Compl. Ex. A.

retract Plaintiff's allegations.[7] The Extrajudicial Notification further states that "[s]hould the disclosure of information continue, the Notifying Party reserves the right to take the appropriate civil and criminal measures."[8]

F.    On June 17, Plaintiff filed this action. He seeks to enjoin Defendants from instituting future civil or criminal legal proceedings against him in Brazil.[9] As of the argument date, no Brazilian actions had been instituted against Plaintiff by Defendants or any related party.

G.    The complaint alleges that an anti-suit injunction is warranted because Brazil LP's limited partnership agreement ("LPA") "establishes the absolute jurisdiction of the Laws and Courts of Delaware."[10] Plaintiff points to Section 9.03 of the LPA for support; it states:

> GOVERNING LAWS. THIS AGREEMENT IS MADE IN THE STATE OF DELAWARE AND THE RIGHTS AND OBLIGATIONS OF THE PARTNERS HEREUNDER SHALL BE INTERPRETED, CONSTRUED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO THE CONFLICT OF LAWS PROVISIONS THEREOF.[11]

---

[7] Compl. Ex. A at 6–7.

[8] Compl. Ex. A at 7.

[9] *See, e.g.*, Compl. ¶¶ 51; 77; 96(1).

[10] *Id.* ¶ 26.

[11] Compl. Ex. G ("LPA") § 9.03.

H.	On August 13, Defendants moved to dismiss the complaint under Court of Chancery Rules 12(b)(1) and 12(b)(6).[12]  Under Rule 12(b)(1), Defendants assert that the Court of Chancery lacks subject matter jurisdiction to hear criminal claims and defamation claims, and that Plaintiff has adequate remedies at law.[13]  Under Rule 12(b)(6), Defendants assert that (1) the Brazil Tower entity that issued the May 2024 Extrajudicial Notification is not one of the named Defendants, (2) Section 9.03 is not a forum-selection clause and thus cannot support an anti-suit injunction, and (3) Plaintiff failed to adequately plead the requisite elements for a preliminary anti-suit injunction.[14]

I.	The Court held oral argument on the motion to dismiss on November 17, 2025.  I took the motion under advisement on that date.

**IT IS ORDERED**, this 9th day of February 2026, that:

1.	The motion to dismiss is granted under Rule 12(b)(1).  Plaintiff requests that the Court enjoin "potential litigation," based on a mere reservation of rights made in 2024 and the misinterpretation of a contract

---

[12] *See* Dkts. 36–39.

[13] Dkt. 37 at 3.

[14] *Id.*

provision. For reasons provided below, this is an insufficient basis upon which to invoke this Court's limited subject-matter jurisdiction.

2. "In resolving a motion to dismiss under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction, the [C]ourt must take all well-pleaded allegations in the complaint as true and make reasonable inferences in the non-movant's favor."[15] "'The burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention.'"[16]

3. "The Court of Chancery is proudly a court of limited jurisdiction. Subject matter jurisdiction is acquired only where '(1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute.'"[17] Plaintiff's equitable hook is his lone requested remedy: a preliminary anti-suit injunction.

---

[15] *Advent Int'l Corp. v. Servicios Funerarios GG S.A. de C.V.*, 2024 WL 3580934, at *4 (Del. Ch. June 7, 2024) (citing *de Adler v. Upper N.Y. Inv. Co.*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013)).

[16] *Id.* at *4 (Del. Ch. June 7, 2024) (quoting *Ropp v. King*, 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007)).

[17] *Advent Int'l Corp. v. Servicios Funerarios GG S.A. de C.V.*, 2024 WL 3580934, at *4 (Del. Ch. June 7, 2024) (quoting *Candlewood Timber Gr., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004)).

4.      An anti-suit injunction is undoubtedly an equitable remedy.[18] Complicating the Court's ability to equitably intervene here, however, is the fact that there is no existing Brazilian litigation for the Court to enjoin. The complaint acknowledges this reality by pleading that litigation is merely "imminent."[19]

5.      Preliminary injunctions are extraordinary remedies granted only if the plaintiff demonstrates: "(1) a reasonable likelihood of success on the merits, (2) imminent, irreparable harm will result if an injunction is not granted, and (3) the damage to [the] [p]laintiff if the injunction does not issue will exceed the damage to the defendants if the injunction does issue."[20] "[A] failure of proof on one of the elements will defeat the application."[21]

6.      "This court has jurisdiction to consider a complaint that states a claim upon which an injunction might properly be entered."[22] But "for a complaint to properly state a claim cognizable in equity solely because of a

---

[18] *See Advent*, 2024 WL 3580934, at *4 (Del. Ch. June 7, 2024) (citing *Nat'l Indus. Grp. (Hldg.) v. Carlyle Inv. Mgmt. LLC*, 67 A.3d 373, 384 (Del. 2013)).

[19] *See* Compl. ¶ 56 ("The Threatened Defamation Lawsuit is not only imminent. It is ongoing.").

[20] *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 579 (Del. Ch. 1998) (quoting *Mills Acq. Co. v. Macmillin, Inc.*, 559 A.2d 1261, 1279 (Del. 1989)); *see also Paragon Techs., Inc. v. Cryan*, 2023 WL 8269200, at *6 (quoting *La. Mun. Police Emps.' Ret. Sys. V. Crawford*, 918 A.2d 1172, 1185 (Del. Ch. 2007)).

[21] *Cantor*, 724 A.2d at 579.

[22] *McMahon v. New Castle Assocs.*, 532 A.2d 601, 605 (Del. Ch. 1987).

request for an injunction, the facts alleged must, if assumed to be true, create a reasonable apprehension of a future wrong."[23]

7. Plaintiff has not established "a reasonable apprehension" that a future Brazilian action[24] against him is imminent, or that a Brazilian action against him would be wrongful.

8. Plaintiff relies on the Extrajudicial Notification to assert that a Brazilian action against him is imminent.[25] The allegation is conclusory and, under the circumstances, unreasonable. The Extrajudicial Notification was issued on May 20, 2024.[26] The only claimed threat of litigation comes from the statement: "[s]hould the disclosure of information continue, the Notifying

---

[23] *Id.*; *see also Young v. Red Clay Cons. Sch. Dist.*, 159 A.3d 713, 781 ("Courts will only enjoin future wrongful conduct where the facts 'show[] reason to apprehend a threat of future violation of judicially-determined rights and duties.'") (quoting *McMahon*, 532 A.2d at 606).

[24] In any event, this Court would likely lack authority to enjoin Brazilian criminal proceedings. *See Advent*, 2024 WL 4598884, at *17 (Del. Ch. Oct. 29, 2024) ("To demand that Servicios Funerarios grant pardons and end criminal proceedings under the direction of foreign state actors would exceed the reach of any anti-suit injunction issued by a Delaware court. The Mexican courts and prosecutor are in control of the matter. As in *UEC*, I hesitate 'to intrude upon this sovereign discretion.'") (quoting *Universal Ent. Corp. v. Aruze Gaming Am., Inc.*, 2020 WL 1258428, at *5 (D. Nev. Mar. 16, 2020)).

[25] *See* Compl. ¶ 56 ("The Threatened Defamation Lawsuit is not only imminent. It is ongoing. Harassment begins the moment a credible threat has been formally issued and not retracted. Plaintiff now lives in uncertainty as to whether he will receive a rogatory letter. He has already had to spend considerable time to understand the options available to him. This Complaint is a result of how seriously he takes this threat.").

[26] Compl. Ex. A at 7.

Party reserves the right to take the appropriate civil and criminal measures."[27]

This reservation of rights, made in 2024, does not permit the Court to conclude that a Brazilian action against Defendant is imminent or inevitable.[28]

9. Plaintiff cites to *Conduent State Healthcare, LLC v. ACE American Insurance Company*[29] for the proposition that "the threat of vexatious litigation [] fulfilled the requirement for imminent irreparable harm and was sufficient for the high bar for issuing an Anti-Suit Injunction."[30] But *Conduent* is distinguishable. In *Conduent*, the parties had been litigating a dispute in the Delaware Superior Court since 2018, when, in 2021, the defendant initiated a related action, seeking related relief in New York.[31] In this case, no actions have been filed in any forum. *Conduent* does not change my view that the May 2024 Extrajudicial Notification does not create a reasonable apprehension of imminent Brazilian litigation.

---

[27] *Id.*

[28] *See Trilogy Portfolio Co., LLC v. Brookfield Real Est. Fin. P'rs, LLC*, 2012 WL 120201, at *6 ("The alleged harm must be imminent and genuine, as opposed to speculative. . . . Potential harm that may occur in the future, however, does not constitute imminent and irreparable injury for the purposes of a TRO or preliminary injunction.") (citations omitted); *Block Fin. Corp. v. Inisoft Corp.*, 2003 WL 136182, at *3 (Del. Ch. Jan. 7, 2003) ("In order to allege sufficient grounds for injunctive relief, a plaintiff must offer something more than speculation or apprehension.") (citations omitted).

[29] 2022 WL 414597 (Del. Ch. Feb. 10, 2022).

[30] AB at 28–29.

[31] *See generally Conduent*, 2022 WL 414597, at *1–3.

10. The complaint argues that a future Brazilian action against Plaintiff would be wrongful because it would amount to a threat to Delaware's jurisdiction over the dispute. The complaint points to Section 9.03 of the LPA for this argument and argues that Section 9.03 is a forum-selection provision.[32]

11. "[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court[.]"[33] Within a contract, the written agreement to submit to the jurisdiction of a given court (or courts) is referred to as a "forum-selection provision."[34]

12. Conversely, "[a] 'choice of law' provision in a contract names a particular state and provides that the substantial laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated."[35]

---

[32] Compl. ¶¶ 65–67.

[33] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972) (quoting *National Equipment Rental, Ltd. v. Szhukhent*, 375 U.S. 311, 315–16 (1964)).

[34] *See, e.g.*, 17A Am. Jur. 2d Contracts § 253 ("A 'forum selection' provision in a contract designates a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship.") (citations omitted).

[35] *Id.* § 255 (citations omitted).

13. Given that forum-selection provisions are bargained-for agreements between parties to resolve disputes in a *specific* forum, it is logical that litigation brought in contravention of a forum-selection provision may constitute irreparable harm predicating equitable relief.[36] That logic, however, does not extend to a choice-of-law provision, where the bargained-for agreement does not restrict the parties to filing litigation in a specific forum.[37]

14. Section 9.03 is a choice-of-law provision that reflects the parties' agreement that "the rights and obligations of the partners [of Brazil LP] shall be interpreted, construed, and enforced in accordance with the laws of the State of Delaware[.]"[38] As a choice-of-law provision, Section 9.03 does not

---

[36] *See Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 386–87 (Del. 2013) ("Carlyle would suffer irreparable harm if it were required to litigate in Kuwait in contravention of the bargain it struck with NIG that is set forth in the forum selection clause of the Subscription Agreement. Carlyle has no adequate remedy other than an anti-suit injunction. Therefore, Carlyle was entitled to equitable relief by having the forum selection clause specifically enforced in the Court of Chancery by the issuance of an anti-suit injunction.").

[37] *See, e.g.*, *USA Cable v. World Wrestling Fed'n Ent., Inc.*, 766 A.2d 462, 469 (Del. 2000) ("The Agreement provides that New York law governs interpretation and enforcement, but it does not require *exclusive* (only nonexclusive) venue in a New York forum.") (emphasis in original).

[38] *Weil v. Morgan Stanley DW Inc.* provides a good example of a standard choice-of-law provision. *Compare* LPA § 9.03 ("This Agreement is made in the State of Delaware and the rights and obligations of the partners hereunder shall be interpreted, construed, and enforced in accordance with the laws of the State of Delaware, without regard to the conflict of law provisions thereof."), *with Weil v. Morgan Stanley DW Inc.*, 877 A.3d 1024, 1032 (Del. Ch. 2005) ("This Agreement

restrict the parties to filing litigation in any specific forum; it merely requires that the dispute be argued and evaluated under Delaware law.[39]

15. A potential Brazilian action thus presents no potential threat to the State's jurisdiction. By extension, there is no reasonable apprehension of a future wrong stemming from the potential initiation of litigation against Plaintiff in Brazil.

16. Plaintiff has failed to establish that the Court should, or could, issue an anti-suit injunction here. There is no reasonable apprehension of imminent, wrongful litigation, and there is no forum-selection provision for the Court to enforce.[40] Accordingly, the Court lacks subject matter jurisdiction over this matter.

17. Because a reviewing jurist may disagree, I also address, briefly and in the alternative, two of Defendants' arguments asserted under Rule 12(b)(6). First, Defendants argue that Section 9.03 of the LPA is not a forum-selection provision and therefore does not preclude an action from being

---

shall be deemed to have been made in the State of California and shall be construed, and the rights and liabilities of the parties determined, in accordance with the laws of the State of California.").

[39] *See supra* note 39.

[40] *See In re Freestone Ins. Co.*, 143 A.3d 1234, 1249 (Del. Ch. 2016) (explaining that "in the absence of a clear, mandatory, and bargained-for forum selection clause, this court traditionally has proceeded with caution when issuing anti-suit injunctions") (collecting cases).

commenced in a different jurisdiction than Delaware.[41]  Second, Defendants argue that Plaintiff failed to state a claim for preliminary injunctive relief because Plaintiff failed to establish imminent, irreparable harm in the absence of an injunction.[42]  I agree with both arguments and conclude, in the alternative, that they are dispositive under Rule 12(b)(6).

18.    In resolving a motion to dismiss under Court of Chancery Rule 12(b)(6) for failing to state a claim on which relief can be granted, "the [C]ourt [(1)] accepts as true all well-pled factual allegations in the pleading, [(2)] credits vague allegations if they give the opposing party notice of the claim, and [(3)] draws all reasonable inferences in favor of the claimant."[43]  "The motion to dismiss will be denied 'unless the [claimant] would not be entitled to recover under any reasonably conceivable set of circumstances.'"[44]

19.    Plaintiff seeks an anti-suit injunction based on Section 9.03 of the LPA, which he interprets to be a forum selection clause.[45]  This Court may

---

[41] Opening Br. for Mot. to Dismiss Pl.'s Compl., Dkt. 37 at 12–14.

[42] *Id.* at 21–22.

[43] *Namdar v. Fried*, 340 A.3d 1184, 1193 (Del. Ch. 2025) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[44] *Id.*

[45] *See, e.g.*, Compl. ¶¶ 42 ("The Court of Chancery, the Delaware Supreme Court, and the Supreme Court of the United States have a well-established precedent of enforcing forum selection clauses."); 43 ("The Limited Partnership Agreement has a clear and unambiguous choice of Delaware internal law provision with an anti-renvoi statement in emphasized language."); 48 ("To invalidate the choice of

issue an anti-suit injunction on the basis of a forum selection clause, but such injunctions "are 'not granted lightly[.]'"[46]

> Indeed, the [C]ourt will enjoin a party from prosecuting an action elsewhere based on a forum selection clause only where "the language selected makes it absolutely clear the parties believed that [this] [C]ourt should forever be the only forum for resolving a dispute." With that said, when the language is absolutely clear, the anti-suit injunction will issue.[47]

20. Here, Section 9.03 is not an "absolutely clear" forum-selection provision. As stated previously, it is a choice-of-law provision. For that reason, Plaintiff's argument that Section 9.03 merits an anti-suit injunction fails.[48]

---

jurisdiction clause, the Defendants would need to 'meet the heavy burden of showing that its enforcement would be unreasonable, unfair, or unjust.'") (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)); 61 ("The Courts of Delaware are the contractual choice of law of the parties, they are convenient to all major parties involved, and they have the requisite sophistication to deal with the underlying issues."); *see also* Pl.'s Answering. Br. in Opp. to Defs.' Mot. to Dismiss, Dkt. 40 at 22 ("Even if the Court assumes that BTC Cessao is not an Alter Ego of Defendants, Delaware can enforce forum selection clauses on Non-Signatories who are the intended related third party beneficiaries of the agreement.").

[46] *SPay, Inc. v. Stack Media Inc.*, 2021 WL 1109181, at *2 (Del. Ch. Mar. 23, 2021) (quoting *FP UC Hldgs., LLC v. Hamilton*, 2020 WL 1492783, at *5 (Del. Ch. Mar. 27, 2020)).

[47] *Id.* (citations omitted).

[48] *See SPay*, 2021 WL 1109181, at *2; *In re Freestone*, 143 A.3d at 1249; *Carlyle*, 67 A.3d at 386–87.

21.     Plaintiff's argument that Brazilian courts have "limited international connectivity and . . . presumably lack[] the knowledge to understand Delaware standards of duty of care, international accounting standards, and cross-border intercompany pricing agreements"[49] is conclusory, unconvincing,[50] and unrelated to the aim of the anti-suit injunction he seeks:  to prevent Defendants and their affiliated entities from initiating Brazilian litigation pertaining to the "Threatened Defamation Lawsuit."[51]   It is also inconsistent with Plaintiff's acknowledgement that Brazilian law recognizes jurisdictional provisions in contracts.[52]

---

[49] Compl. ¶ 62.

[50] *See Takeda Pharms. U.S.A., Inc. v. Genetech, Inc.*, 2019 WL 1377221, at *6 (Del. Ch. Mar. 26, 2019) ("Takeda has not explained why any procedural differences between Germany and Delaware prevent the German court from entering full, fair, and complete relief on Takeda's license defense.  Takeda also doubts whether the German court can apply Delaware law 'as effectively as Delaware courts could.' Takeda has not persuaded me the German court cannot resolve the dispute before it[.]") (citations omitted).

[51] *See* Compl. at 21 (stating the cause of action is to prohibit the filing of "the threatened defamation lawsuit, or similar until jurisdiction and venue are argued by Defendants before the Court"); 41 (praying the Court "[i]ssue a Preliminary Anti-Suit Injunction against Defendants, subsidiaries, affiliates, and officers from initiating litigation abroad against Plaintiff for these, or substantially equivalent allegations in Brazilian Courts, or other jurisdictions.").

[52] *See id.* ¶ 37.

22. Finally, and as previously explained, Plaintiff failed to establish a threat of imminent, irreparable harm warranting preliminary injunctive relief.

23. Because there is no reasonably conceivable set of facts Plaintiff might prove to obtain an anti-suit injunction, the complaint fails to state a claim for relief.

24. This is a Final Report. Exceptions may be taken pursuant to Court of Chancery Rule 144.


/s/ *Danielle Gibbs*
Magistrate in Chancery