# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN J. MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0123-MTZ |
| | ) | |
| REV WORLDWIDE, INC., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 12, 2020
Date Decided:  December 30, 2020

William M. Kelleher and Phillip A. Giordano, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware; Robert A. Giacovas, Lainie E. Cohen, and Jacob A. Englander, LAZARE POTTER GIACOVAS & MOYLE LLP, New York, New York, *Attorneys for Plaintiff.*

Raymond W. Cobb, O'HAGAN MEYER LLP, Wilmington, Delaware; Kevin M. O'Hagan and Shane M. Bradwell, O'HAGAN MEYER LLP, Chicago, Illinois, *Attorneys for Defendant*.

**ZURN, Vice Chancellor.**

A plaintiff generally has substantial discretion over its choice of venue. But that discretion may be limited by a valid forum selection clause.[1] If a forum selection clause validly limits a plaintiff to a single forum, that clause renders a court that otherwise has jurisdiction into an improper venue for the plaintiff to sue.[2] In the present case, the defendant has moved to dismiss for improper venue, contending that two of the plaintiff's claims are subject to valid forum selection clauses mandating adjudication in courts of other states. The plain language of the relevant agreements forecloses Delaware courts from hearing those claims, and the plaintiff has failed to demonstrate that enforcement of those clauses would be unreasonable or unjust under the circumstances. Those claims must be dismissed pursuant to Court of Chancery Rule 12(b)(3).

## I.   BACKGROUND[3]

Plaintiff John Mack is a shareholder and noteholder of Defendant Rev Worldwide, Inc. ("Rev" or "Defendant"). Plaintiff lent Defendant funds through a series of notes and corresponding security agreements. Defendant juggled its debt

---

[1] *Scanbuy, Inc. v. NeoMedia Techs., Inc.*, 2014 WL 5500245, at *4 (Del. Ch. Oct. 31, 2014); *Troy Corp. v. Schoon*, 2007 WL 949441, at *3 (Del. Ch. Mar. 26, 2007).

[2] *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *6 (Del. Ch. Oct. 19, 2000).

[3] These facts are drawn from the Amended and Supplemental Verified Complaint filed on February 28, 2020 and the documents integral to it. Docket Item ("D.I.") 28 [hereinafter "Am. Compl."]. Citations in the form of "Ex. —" refer to exhibits attached and integral to the Amended Complaint.

held by private noteholders and its debt held by a commercial lender through terms and procedures that repeatedly subordinated Plaintiff beneath the commercial lender. Plaintiff contends Defendant's recent juggling act was improper and that Defendant has defaulted on Plaintiff's debt. Plaintiff seeks relief in this Court, but Plaintiff's contractual arrangement with Defendant includes forum selection clauses that preclude this Court from hearing Plaintiff's claims.

**A.      Plaintiff Invests In Defendant And Executes Notes And Security Agreements.**

Plaintiff has been a stockholder of Defendant since August 2011. On December 12, 2012, Defendant entered into a Loan Agreement with Silicon Valley Bank ("SVB"), borrowing at least $1.5 million (the "Loan Agreement"). Thereafter, Plaintiff joined SVB as a creditor and noteholder of Defendant. Between 2013 and 2015, Plaintiff loaned Defendant a total of $2.5 million through a series of transactions, investing alongside other noteholders in each series. Plaintiff and Defendant documented Plaintiff's loans via six Subordinated Secured Convertible Promissory Notes and Subordinated Secured Convertible Line of Credit Notes

(collectively, the "Notes"),[4] each of which was accompanied by a corresponding security agreement (collectively, the "Security Agreements").[5]

Aside from differences in principal, each Note contains substantially identical terms, and each Security Agreement contains identical terms. Under the Security Agreements, Defendant covenanted to refrain from disposing of, restricting, or otherwise encumbering Defendant's collateral without Plaintiff's prior written consent, except as otherwise provided in the Notes.[6] And of import here, each Security Agreement is governed by Delaware law and incorporates by reference the forum selection clause in its corresponding Note:

> Governing Law. This Agreement and the Loan Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the laws of the State of Delaware. The other provisions of Sections JURISDICTION and WAIVER OF JURY TRIAL of the [corresponding Note] are incorporated herein, *mutatis mutandis*, as if a part hereof.[7]

---

[4] Exs. B, E–I.

[5] Ex. C. Only the Security Agreement appearing at Exhibit C has been provided to the Court, and the parties have proceeded on the assumption that all Security Agreements take the same form and include the same terms.

[6] *See id.* § 6(d).

[7] *Id.* § 17.

In turn, each Note provides that it is governed by Delaware law,[8] and contains the following "Jurisdiction" provision, or forum selection clause, in favor of Texas courts:

> *Jurisdiction.* EACH PARTY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT IT WILL NOT COMMENCE ANY ACTION, LITIGATION OR PROCEEDING OF ANY KIND WHATSOEVER AGAINST ANY OTHER PARTY IN ANY WAY ARISING FROM OR RELATING TO THIS AGREEMENT AND ALL CONTEMPLATED TRANSACTIONS, INCLUDING, BUT NOT LIMITED TO, CONTRACT, EQUITY, TORT, FRAUD AND STATUTORY CLAIMS, IN ANY FORUM OTHER THAN THE US DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS IN AUSTIN, TEXAS OR THE COURTS OF THE STATE OF TEXAS SITTING IN TRAVIS COUNTY, TEXAS, AND ANY APPELLATE COURT FROM ANY THEREOF. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND AGREES TO BRING ANY SUCH ACTION, LITIGATION OR PROCEEDING ONLY IN US DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS IN AUSTIN, TEXAS OR THE COURTS OF THE STATE OF TEXAS SITTING IN TRAVIS COUNTY, TEXAS. EACH PARTY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, LITIGATION OR PROCEEDING IS CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.[9]

In addition, each Note permits amendment or waiver of its terms upon majority vote of Plaintiff's fellow noteholders:

---

[8] *See* Ex. B § 10(h); Ex. E § 10(h); Ex. F § 11(h); Ex. G § 10(h); Ex. H § 11(J); Ex. I § 10(h).

[9] Ex. B § 10(J); Ex. E § 10(J); Ex. F § 11(J); Ex. G § 10(J); Ex. H § 11(J); Ex. I § 10(J).

*Waiver and Amendment*. Any provision of this Note may be amended, waiver or modified upon the written consent of the Company and a Majority in Interest of Investors. Notwithstanding the foregoing, the written consent of Investor shall be required to reduce the principal amount of this Note without Investor's written consent, or reduce the rate of interest of this Note without Investor's written consent.[10]

And under each Note, "'Majority in Interest of Investors' shall mean, as of any date, investors holding more than 50% of the aggregate outstanding principal amount of the Notes on such measurement date."[11]

### B. Plaintiff Executes The Subordination Agreement, And Defendant Capitalizes On Plaintiff's Secondary Position To SVB.

In view of Defendant's obligations to SVB, the Security Agreements and Notes are expressly subject to the terms and conditions of a Subordination Agreement between Plaintiff, several of Defendant's other creditors, and SVB (the "Subordination Agreement").[12] Pursuant to the Subordination Agreement, Plaintiff agreed to take a secondary security interest in Defendant's collateral behind SVB until Defendant paid SVB in full under the Loan Agreement.

The Subordination Agreement is governed by California law and contains a forum selection clause in favor of California courts:

---

[10] Ex. B § 10(b); Ex. E § 10(b); Ex. F § 11(b); Ex. G § 10(b); Ex. H § 11(b); Ex. I § 10(b).

[11] Ex. B § 6(l); Ex. E § 6(i); Ex. F § 7(j); Ex. G § 6(l); Ex. H § 7(j); Ex. I § 6(l).

[12] Ex. D.

5

This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to conflicts of laws principles. Creditor and Bank submit to the exclusive jurisdiction of the state and federal courts located in Santa Clara County, California in any action, suit, or proceeding of any kind, against it which arises out of or by reason of this Agreement.[13]

Although Defendant was not a formal party to the Subordination Agreement, it defines "Borrower" as Defendant and contains multiple provisions detailing Defendant's payment obligations to Plaintiff and SVB and Plaintiff and SVB's rights to collect on Defendant's collateral in event of default.[14] Accordingly, Defendant signed the Subordination Agreement, evidencing that "[t]he undersigned [Borrower] approves of the terms of this Agreement."[15]

Plaintiff alleges that Defendant exploited Plaintiff's status behind SVB, established by the Subordination Agreement, by twice amending the Loan Agreement to extend the SVB loan's maturity date and further subordinate Plaintiff's Notes. First, with Plaintiff's knowledge and consent, Defendant entered into an Amended and Restated Loan and Security Agreement with SVB on February 1, 2014 (the "2014 Loan Agreement"). The 2014 Loan Agreement matured four years from execution, extending Plaintiff's status as a secondary subordinated creditor until February 2018. As alleged, under the Security Agreements, any further

---

[13] *Id.* § 15.

[14] *Id.* at 1, Recital A.

[15] *Id.* at 7, Signature Page.

6

subordination of Plaintiff's secured interests beyond that date would require his consent. Full satisfaction of Defendant's obligations to SVB pursuant to the 2014 Loan Agreement would prioritize Defendant's obligations to Plaintiff under the Notes and Security Agreements.

But in 2017, when full satisfaction under the 2014 Loan Agreement was imminent, Defendant again extended its obligations to SVB—this time, without Plaintiff's knowledge or consent. On December 21, 2017, Defendant entered into a Second Amended and Restated Loan and Security Agreement with SVB for an additional line of credit in the amount of $1 million (the "2017 Loan Agreement"). The 2017 Loan Agreement purports to amend and replace the 2014 Loan Agreement; to extend the SVB loan's maturity date and Plaintiff's status as a secondary subordinated creditor until June 1, 2021; and to foreclose Plaintiff from collecting under the Notes and Security Agreements before that date.

### C. Plaintiff Commences This Action; Thereafter, Defendant And A Majority In Interest Of Investors Approve And Execute The Amendment And 2019 Note.

Defendant has not paid any interest or principal under any of the Notes on the grounds that the 2014 and 2017 Loan Agreements permissibly extended Plaintiff's subordinated status. Plaintiff contends Defendant has defaulted. On February 15, 2019, Plaintiff filed a verified complaint commencing this action (the "Initial

7

Complaint").[16] Relevant to this Motion, Count III of the Initial Complaint alleged that Defendant breached the Security Agreements by entering into the 2017 Loan Agreement without Plaintiff's knowledge and consent.[17]

On April 17, Defendant moved to dismiss "pursuant to Court of Chancery Rules 12(b)(3), and 12(b)(6)" (the "Initial Motion").[18] Defendant argued that Count III should be dismissed pursuant to Rule 12(b)(3) because the Subordination Agreement contains a forum selection clause in favor of California and "Plaintiff's claims in Count III related to breaches of the Security Agreements are all based upon the Subordination Agreement."[19] The parties fully briefed the Initial Motion as of July 17.[20]

With this litigation underway, on October 25, Defendant's counsel sent Plaintiff's counsel three documents affecting Plaintiff's pending claims: (1) a Note Amendment Notice (the "Amendment Notice");[21] (2) an Amendment to Secured Convertible Promissory Notes (the "Amendment");[22] and (3) a Subordinated Secured Convertible Promissory Note in the amount of $2.5 million, reflecting the

---

[16] D.I. 1.

[17] *Id.* ¶¶ 49–56.

[18] D.I. 3.

[19] D.I. 6 at 11 (internal quotation marks omitted).

[20] D.I. 7; D.I. 9.

[21] Ex. J.

[22] Ex. K.

total amount of the debt owed to Plaintiff under the Notes (the "2019 Note").[23]  In

the accompanying correspondence, Defendant's counsel explained,

> We are amending and restating the secured convertible notes . . . As
> part of the change, we are granting additional interest (1% and 2%
> points) for noteholders that agree to the amendment on or before
> October 31, 2019.  Moreover, please know that if a majority in interest
> of the noteholders approve the amendment, the amended note will apply
> to ALL noteholders, regardless of whether they have consented.[24]

The Amendment Notice explained that the 2019 Note would effectuate the following

"proposed" changes to the existing Notes:

---

[23] Ex. L.

[24] Am. Compl. ¶ 44.

The "2019 Note" amends and replaces the Oct. 2013, Dec. 2013 and July 2014 series (the "Original Notes") which had expired on May 31, 2015, creating a single uniform note which expires on October 1, 2021.

The 2019 Note is binding as to an Investor upon such investor signing it. In addition, provided that the majority in interest of the noteholders for each series consents, the change will apply to all noteholders.

The Board has authorized the 2019 Note for $20 million.

Section 1: Neither interest nor principal are reduced. The section incorporates an incentive for investors who approve and sign the Amendment and the Note on/before October 31, 2019 . . . . For Investors that do not sign the Amendment and Note on/before October 31, 2019, the interest remains the same as in the Original Notes: 8% per annum compounded annually.

. . .

Section 10: Clarifies that the 2019 Note continues to be subordinated to the Designated Senior Debt held by Silicon Valley Bank.[25]

The Amendment Notice afforded Plaintiff four business days to review and determine whether to execute the accompanying final Amendment and 2019 Note.

On October 31, the last day to accept the Amendment and 2019 Note, Plaintiff informed Defendant "that he could not and would not agree to such amendment, and that he believed that this ill-conceived corporate action should be rescinded, and to the extent it is not rescinded, [he] objected, did not consent, and reserved all of his rights."[26] On December 20, Defendant notified Plaintiff that as of November 1, the

---

[25] Ex. J.

[26] Am. Compl. ¶ 62.

10

requisite majority of noteholders had agreed to the Amendment and 2019 Note. Defendant contends that with the consent of the "simple majority of all noteholders,"[27] the 2019 Note and Amendment bind Plaintiff, waive Defendant's prior default under the Notes, and provide for a new maturity date of October 1, 2021. Defendant afforded Plaintiff another opportunity to consent to the 2019 Note, which he rejected.

Defendant has issued nearly $14.5 million in notes. Approximately $3.7 million, or 26 percent, of that debt is held by officers of Defendant (the "Related Parties"). Plaintiff alleges that the majority vote in favor of the Amendment and 2019 Note was secured only through the consent of the Related Parties, and that Defendant would have been unable to obtain the requisite vote from a majority of the "disinterested" noteholders alone.[28]

The Amendment explains that it and the 2019 Note spring from the Notes' "Amendment and Waiver" provisions, which permit amendment upon consent of the Majority in Interest of Investors.[29] Correspondingly, the Amendment's recitals explain that "all of the Original Notes subject to this Amendment may be amended, waived or modified upon the written consent of the Company and a Majority in

---

[27] *Id.* ¶ 58; *see also id.* ¶ 60.

[28] *Id.* ¶¶ 59, 60.

[29] *See* Ex. K at 1, §§ 2(c), 4(a); *see also* Ex. L §§ 1, 2, 13(m).

11

Interest of Investors (the 'Requisite Consent')," and that "the Company and the parties hereto, which constitute the Requisite Consent, desire to replace, amend and restate the Original Notes, unifying them into a single Amended and Restated Secured Convertible Promissory Note (2019 Edition) (the '2019 Note')."[30] The Amendment further states that "[i]f an investor has not subscribed this Amendment and the 2019 Note on or before October 31, 2019," then "this note should be binding and effective as to such investor either because investor consented to this Note after such date or because a Majority in Interest of Investors has decided to amend, restate and unify the Original Notes with the 2019 Note."[31] It goes on to explain that the Amendment and 2019 Note become effective upon receipt of the Majority in Interest of Investors' consent:

> *Effectiveness of Amendment.* As to the amendment and restatement of the Original Notes, this Amendment shall be effective as to each party hereto as of the latter date of execution by Investor or Company, and as to each other patty under the Original Notes, upon the execution of this Amendment by the Company and a sufficient number of parties to constitute the Requisite Consent. Additional parties hereto nonetheless may be added after the effectiveness hereof.[32]

The 2019 Note mirrors the Notes through several provisions. It contains an identical "Waiver and Amendment" provision:

---

[30] Ex. K at 1, Recitals.

[31] *Id.* § 2(c).

[32] *Id.* § 4(a).

> Any provision of this Note may be amended, waived or modified upon the written consent of the Company and a Majority in Interest of Investors. Notwithstanding the foregoing, the written consent of Investor shall be required to reduce the principal amount of this Note without Investor's written consent, or reduce the rate of interest of this Note without Investor's written consent.[33]

The 2019 Note also defines "Majority in Interest of Investors" in the same manner as the Notes.[34] And, like the Notes and Security Agreements, the Amendment and 2019 Note are governed by Delaware law and provide for exclusive jurisdiction in the Texas courts.[35] The 2019 Note's forum selection clause is identical to that of the Notes, excerpted above.[36]

### D. Plaintiff Files The Amended Complaint.

On January 17, 2020, in view of the Amendment and 2019 Note, Plaintiff sought leave to file an amended complaint.[37] Defendant stipulated to Plaintiff doing so,[38] and Plaintiff filed an Amended and Supplemental Verified Complaint on February 28 (the "Amended Complaint").[39] The Amended Complaint asserts five

---

[33] Ex. L § 13(b).

[34] *Id.* § 8(h) ("'Majority in Interest of Investors' shall mean, as of any date, investors holding more than 50% of the aggregate outstanding principal amount of the Notes on such measurement date.").

[35] Ex. K § 4(d), (f); Ex. L § 13(h), (j).

[36] Ex. L § 13(j).

[37] D.I. 24.

[38] D.I. 27.

[39] *See generally* Am. Compl.

claims against Defendant. In addition to the four claims asserted in the Initial Complaint, the Amended Complaint added a claim to address Defendant's post-complaint conduct. Relevant here, Count III of the Amended Complaint is identical to Count III of the Initial Complaint and alleges Defendant breached the Security Agreements by entering into the 2017 Loan Agreement with SVB.[40] Count V, added in response to the Amendment and 2019 Note, seeks a declaratory judgment that the Amendment and 2019 Note are invalid in view of the Security Agreements.[41] Plaintiff brings Claims III and V solely in his capacity as a noteholder.

On March 13, Defendant moved to dismiss, arguing that Counts III and V must be dismissed pursuant to Rule 12(b)(3) in view of the forum selection clauses contained in the relevant agreements (the "Motion").[42] Specifically, Defendant contends that (1) Count III must be dismissed because the Security Agreements and Notes' forum selection provisions mandate adjudication in Texas, or in the alternative, the Subordination Agreement's forum selection clause mandates adjudication in California; and (2) Count V must be dismissed because the Amendment and 2019 Note's forum selection clauses mandate adjudication in Texas.

---

[40] *Id.* ¶¶ 79–86.

[41] *Id.* ¶¶ 96–101.

[42] D.I. 29; D.I. 33.

The parties fully briefed the Motion as of June 22.[43] I heard argument on September 16,[44] and took the Motion under advisement with respect to Counts III and V on October 12 after receiving supplemental briefing.[45]

## II. ANALYSIS

"The proper procedural rubric for addressing a motion to dismiss based on a forum selection clause is found under Rule 12(b)(3), improper venue."[46] When addressing a motion under Rule 12(b)(3), "the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset."[47]

In *Ingres Corp. v. CA, Inc.*, the Delaware Supreme Court held that "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the [common law] principle might otherwise

---

[43] D.I. 33; D.I. 37; D.I. 40.

[44] D.I. 44; D.I. 53. The Motion has been resolved with respect to Counts I, II, and IV of the Amended Complaint. At argument, I converted the Motion with respect to Counts I, II, and IV to a motion for summary judgment and ordered corresponding submissions. I also stayed the Motion with respect to Count I based on the statute of limitations. *See* D.I. 53.

[45] D.I. 51; D.I. 52.

[46] *Sylebra Cap. P'rs Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *9 (Del. Ch. Oct. 9, 2020) (quoting *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018)).

[47] *Id.* (quoting *In re Bay Hills*, 2018 WL 3217650, at *4).

require a different result."[48] Such clauses "are presumptively valid and should be specifically enforced unless the resisting party clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching."[49]

Accordingly, the Court subjects presumptively valid forum selection clauses "to as-applied review . . . in real-world situations to ensure that they are not used unreasonably and unjustly."[50] The Court "should assess the reasonableness of a forum selection clause on a case-by-case basis."[51] To escape the reach of a forum selection clause on grounds that it is unreasonable or unjust, the avoiding party "bears a heavy burden to demonstrate that enforcement here would place it at an unfair disadvantage or otherwise deny it its day in court."[52]

---

[48] 8 A.3d 1143, 1145 (Del. 2010) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.* (*Carlyle II*), 67 A.3d 373, 381 (Del. 2013).

[49] *Sylebra*, 2020 WL 5989473, at *10 (alteration in original) (quoting *Ingres*, 8 A.3d at 1146).

[50] *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 957 (Del. Ch. 2013) (alterations and internal quotation marks omitted) (quoting *Ingres*, 8 A.3d at 1146); *see also id.* at 941 ("Under *Bremen* and its progeny, like our Supreme Court's recent *Carlyle* decision, as-applied challenges to the reasonableness of a forum selection clause should be made by a real plaintiff whose real case is affected by the operation of the forum selection clause. If a plaintiff faces a motion to dismiss because it filed outside the forum identified in the forum selection clause, the plaintiff can argue under *Bremen* that enforcing the clause in the circumstances of that case would be unreasonable." (footnote omitted)).

[51] *Ingres*, 8 A.3d at 1146.

[52] *Sylebra*, 2020 WL 5989473, at *11 (alterations and internal quotation marks omitted) (quoting *Cap. Gp. Cos., Inc. v. Amour*, 2004 WL 2521295, at *6 (Del. Ch. Nov. 3, 2004)).

If that party fails to carry this burden, "[a] valid forum selection clause must be enforced."[53] "The enforcement of a forum selection clause is the act of confining the litigation to the chosen forum. Such enforcement action may take various forms. For example, the court may dismiss or stay the case, if it is not the forum chosen in the forum selection clause . . . ."[54]

Consistent with this framework, the forum selection clauses at issue here "are considered presumptively, but not necessarily, situationally enforceable."[55] Plaintiff has failed to carry his heavy burden of demonstrating that enforcement would be unjust or unreasonable upon as-applied review. Counts III and V must therefore be dismissed pursuant to Rule 13(b)(3).

### A.    Count V Is Dismissed Pursuant To Rule 12(b)(3).

Defendant contends that Count V, which seeks a declaratory judgment that the Amendment and 2019 Note are invalid, must be dismissed. The Amendment and 2019 Note both contain forum selection clauses that provide the Texas courts with exclusive jurisdiction over any action or proceeding "in any way arising from or relating to th[ose] agreement[s] and all contemplated transactions."[56] Under

---

[53] *Carlyle II*, 67 A.3d at 381.

[54] *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp. (Hldg.)* (*Carlyle I*), 2012 WL 4847089, at *6 (Del. Ch. Oct. 11, 2012) (footnotes omitted), *aff'd*, *Carlyle II*, 67 A.3d 373 (Del. 2013).

[55] *Boilermakers*, 73 A.3d at 957.

[56] Ex. K § 4(f); Ex. L § 13(j).

Delaware law, the forum selection clauses in the Amendment and 2019 Note are presumptively valid and must be enforced unless Plaintiff demonstrates that enforcement would be unreasonable and unjust, or that the clause itself is invalid for fraud or overreaching.[57] Plaintiff asserts two broad arguments he believes render enforcement of the clauses unjust and unreasonable in this instance. Each falls short.

### 1. Plaintiff Consented To The Forum Selection Clauses In The Amendment And 2019 Note.

Plaintiff argues that the Court should not enforce the clauses in the Amendment and 2019 Note because he did not execute or otherwise consent to those documents and therefore is not bound by their terms. But this Court has recognized that where a party has freely and voluntarily agreed to a contractual scheme in which his will may be superseded and subsumed by the will of his counterparties, he has consented to a forum selection clause imposed through that scheme.[58] In the absence of more direct authority, I look to cases interpreting forum selection bylaws, as Delaware law views such bylaws as "contractual"[59] and enforces them "in the same way [Delaware] enforces any other forum selection clause."[60]

---

[57] *See, e.g., Sylebra*, 2020 WL 5989473, at *9–10.

[58] *See id.* at *10–11; *Boilermakers*, 73 A.3d at 954–58.

[59] *Boilermakers*, 73 A.3d at 939, 940.

[60] *Sylebra*, 2020 WL 5989473, at *9–10 (alteration in original) (quoting *Boilermakers*, 73 A.3d at 940); *accord Boilermakers*, 73 A.3d at 957 ("[B]ecause bylaws are interpreted using contractual principles, the bylaws will also be subject to scrutiny under the principles for evaluating contractual forum selection clauses . . . adopted by our Supreme Court . . . .

In *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, then-Chancellor Strine considered the plaintiffs' claim that forum selection bylaws were "contractually invalid, and therefore c[ould not] be enforced like other contractual forum selection clauses . . . because they were unilaterally adopted by the [defendant] boards using their power to make bylaws."[61] The plaintiffs "argue[d] that this method of adopting a forum selection clause is invalid as a matter of contract law, because it does not require the assent of the stockholders who will be affected by it."[62] The Court rejected the plaintiffs' position:

> That plaintiffs did not vote on the bylaws at the time of their adoption is not relevant to the question of whether the bylaws are valid or contractually binding under Delaware law. Like any other bylaw, which may be unilaterally adopted by the board and subsequently modified by stockholders, these bylaws are enforced according to their terms. Thus, they will be enforced just like any other forum selection clause.[63]

---

The forum selection bylaws will therefore be construed like any other contractual forum selection clause and are considered presumptively, but not necessarily, situationally enforceable.").

[61] *Boilermakers*, 73 A.3d at 938.

[62] *Id.* at 955.

[63] *Id.* at 958 (citing *Carlyle II*, 67 A.3d at 381–82); *see also id.* at 957 ("[A] corporation's bylaws are part of an inherently flexible contract between the stockholders and the corporation under which the stockholders have powerful rights they can use to protect themselves if they do not want board-adopted forum selection bylaws to be part of the contract between themselves and the corporation. And, as noted, precisely because forum selection bylaws are part of a larger contract between the corporation and its stockholders, and because bylaws are interpreted using contractual principles, the bylaws will also be subject to scrutiny under the principles for evaluating contractual forum selection clauses . . . adopted by our Supreme Court." (footnotes omitted)).

In reaching this conclusion, the Court turned to fundamental principles of corporate and contract law, reasoning that "the bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers, and stockholders formed within the statutory framework of the DGCL" and that "[t]his contract is, by design, flexible and subject to change in the manner that the DGCL spells out and that investors know about when they purchase stock in a Delaware corporation."[64] By purchasing stock, the "stockholders contractually assent to be bound by bylaws that are valid under the DGCL—that is an essential part of the contract agreed to when an investor buys stock in a Delaware corporation."[65] And "[w]here . . . the certificate of incorporation has conferred on the board the power to adopt bylaws [without stockholder approval] . . . the stockholders have assented to that new bylaw being contractually binding."[66] "Such a change by the board is not extra-contractual simply because the board acts unilaterally; rather it is the kind of change that the

---

[64] *Id.* at 939; *accord Sylebra*, 2020 WL 5989473, at \*10; *City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229, 233, 240 (Del. Ch. 2014), *superseded on other grounds by statute*, 8 *Del. C.* § 115.

[65] *Boilermakers*, 73 A.3d at 958; *accord id.* at 940 ("In other words, an essential part of the contract stockholders assent to when they buy stock in [the defendant company] is one that presupposes the board's authority to adopt binding bylaws consistent with 8 *Del. C.* § 109. For that reason, our Supreme Court has long noted that bylaws, together with the certificate of incorporation and the broader DGCL, form part of a flexible contract between corporations and stockholders, in the sense that the certificate of incorporation may authorize the board to amend the bylaws' terms and that stockholders who invest in such corporations assent to be bound by board-adopted bylaws when they buy stock in those corporations.").

[66] *Id.* at 958.

overarching statutory and contractual regime the stockholders buy into explicitly allows the board to make on its own."[67] And under that same contractual scheme, "[s]tockholders likewise agree that a requisite majority of other stockholders may adopt bylaws with which they do not agree. A dissenting stockholder can no more object to the authority of a board to adopt a bylaw than it could object to the requisite majority of stockholders adopting a bylaw."[68] Finally, *Boilermakers* looked to United States Supreme Court precedent that "reinforce[ed] the conclusion that forum selection bylaws are, as a facial matter of law, contractually binding."[69]

This Court has applied *Boilermakers* to conclude that protesting plaintiffs still effectively consented to a forum selection bylaw. In *Sylebra Capital Partners Master Fund, Ltd. v. Perelman*, Vice Chancellor Slights considered the plaintiff's contention that the plaintiff's inability to sell its shares precluded its consent to the subject forum selection bylaw.[70] Invoking *Boilermakers*, the Court concluded that "[t]his argument rests on a flawed reading of Delaware law," as "[t]he ability of a board of directors of a Delaware corporation to adopt binding bylaws is an essential

---

[67] *Id.* at 956.

[68] *Id.* at 956 n.99.

[69] *Id.* at 957 (considering *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594–95 (1991), which held that a forum selection provision was reasonable and enforceable even though it was not negotiated).

[70] *Sylebra*, 2020 WL 5989473, at *10.

part of the contract stockholders assent to when they buy stock,"[71] and "upon investing in the Company, [the plaintiff] knew that it was subject to" certain contractual restrictions in the company's articles of incorporation and bylaws.[72]

And in *City of Providence v. First Citizens BancShares, Inc.*, Chancellor Bouchard addressed whether it would be "unjust" to apply a forum selection bylaw "because the stockholders of [the company] effectively lack[ed] the ability to repeal it" because of the presence of a controlling stockholder.[73]  While recognizing that *Boilermakers* did not squarely address such an as-applied challenge, the Court reasoned that while "a board-adopted forum selection bylaw, much like any board-adopted bylaw, is subject to the most direct form of attack by stockholders who do not favor them"[74]—repeal by majority vote—neither the DGCL nor *Boilermakers* "mandate that a board-adopted forum selection bylaw can be applied only if it is realistically possible that stockholders may repeal it."[75]  "[T]hat there is currently a controlling stockholder who may favor a board-adopted forum selection bylaw . . .

---

[71] *Id.* (quoting *Boilermakers*, 73 A.3d at 940, and citing *City of Providence*, 99 A.3d at 240).

[72] *Id.* at *11.

[73] *City of Providence*, 99 A.3d at 241.

[74] *Id.* (alterations and internal quotation marks omitted) (quoting *Boilermakers*, 73 A.3d at 954).

[75] *Id.*

22

does not make it *per se* unreasonable to enforce the bylaw."[76]  Such a plaintiff may still avoid the forum selection bylaw by demonstrating that its enforcement is unreasonable because it would be inequitable to require the parties to litigate in the chosen forum.[77]

While this case does not involve a forum selection bylaw, *Boilermakers*, *Sylebra*, and *City of Providence* refute Plaintiff's contention that the forum selection clauses in the Amendment and 2019 Note are invalid because he did not consent to those specific agreements.  Just as stockholders assent to an "overarching statutory and contractual regime" that "explicitly allows the board to make [changes] on its own"[78] and that permits "a requisite majority of other stockholders [to] adopt bylaws with which they do not agree,"[79] Plaintiff assented to the Notes' contractual

---

[76] *Id.*

[77] *Id.* at 242 ("Reaching this conclusion does not leave minority stockholders of controlled corporations without recourse.  *Schnell* [*v. Chirs-Craft Industries, Inc.*, 285 A.2d 437, 439 (Del. 1971), which held that "inequitable action does not become permissible simply because it is legally possible,"] is a powerful lens through which this Court evaluates the as-applied validity of forum selection bylaws.  In the appropriate case, a foreign forum selection bylaw may not withstand *Schnell* scrutiny.  For reasons previously discussed, however, Providence has not convinced me that it would be inequitable here to require Providence to litigate the claims asserted in the Merger Complaint in the United States District Court for the Eastern District of North Carolina or in a North Carolina state court.").

[78] *Boilermakers*, 73 A.3d at 956.

[79] *Id.* at 956 n.99.

23

framework, which explicitly recognizes that dissenting noteholders will be bound by amendments adopted by a Majority in Interest of Investors.

On six occasions between 2013 and 2015, Plaintiff executed Notes containing the same "Waiver and Amendment" provision.[80] Plaintiff agreed that the Notes "may be amended, waived or modified upon the written consent of the Company and a Majority in Interest of Investors."[81] Under that clear contractual framework, Plaintiff "assent[ed] to not having to assent to" amendments adopted by a Majority in Interest of Investors.[82] The Amendment and 2019 Note indicate that they, including their forum selection clauses, were enacted by just this mechanism.[83] Plaintiff's argument that he must have consented to the Amendment and 2019 Note, or had the opportunity to negotiate their terms, for their provisions to bind him "is an interpretation that contradicts the plain terms of the contractual framework" he agreed to via the Notes.[84]

---

[80] *See* Ex. B § 10(b); Ex. E § 10(b); Ex. F § 11(b); Ex. G § 10(b); Ex. H § 11(b); Ex. I § 10(b).

[81] *See, e.g.*, Ex. B § 10(b).

[82] *See Boilermakers*, 73 A.3d at 956. Plaintiff does not argue that use of the Notes' "Waiver and Amendment" provisions itself was a wrongful means of adopting the Amendment and 2019 Note: he makes no meaningful challenge that the process renders enforcement of their forum selection clauses unjust or unreasonable. And having notice of this contractual process, he cannot disavow it now. *See Shute*, 499 U.S. at 595 (stating that it is reasonable to enforce a forum selection clause where the complaining party had notice of it).

[83] Ex. K at 1, §§ 2(c), 4(a); Ex. L §§ 1, 2, 13(m); *see also* Ex. J.

[84] *Boilermakers*, 73 A.3d at 956.

As recognized in *Boilermakers* and *Carnival Cruise Lines, Inc. v. Shute*, a forum selection clause may be reasonable although it was not subject to negotiation, absent evidence of fraud or overreaching with respect to the clause.[85] Plaintiff was on notice of the amendment process via the Notes; presumably could have chosen to reject that process by foregoing his debt investment; received final versions of the Amendment and 2019 Note that included the forum selection clauses at issue; and was aware that his fellow noteholders may consent to those documents such that they would become binding on Plaintiff. The forum selection clauses in the Amendment and 2019 Note are not invalid simply because they lack Plaintiff's specific and contemporaneous consent or buy-in.

Plaintiff also resists being bound by the Notes' contractual scheme because the Majority in Interest of Investors includes Defendant's Related Parties, and because the resulting Amendment and 2019 Note foreclosed Plaintiff from recouping his investment as originally anticipated. Plaintiff contends that nothing in the Amendment and 2019 Note "prevents Rev from using the purported majority (which includes related parties) to further extend the October 2021 maturity date to avoid ever having to pay back the investors (just as the extension of the SVB line of credit has accomplished)."[86]

---

[85] *See Shute*, 499 U.S. at 594–95; *Boilermakers*, 73 A.3d at 956–58.

[86] Am. Compl. ¶ 61.

But in *City of Providence*, the Court enforced a unilaterally imposed forum selection bylaw over an investor's complaint that his vote would be continually subsumed by the vote of an interested majority stockholder.[87] Under that principle, neither the Related Parties' vote nor its adverse effect on Plaintiff renders the forum selection clause invalid. As *City of Providence* instructs, Plaintiff cannot point to an interested vote to avoid the forum selection clause's effect. Rather, he must meet his heavy burden of demonstrating that it would be inequitable to require the parties to litigate in the chosen forum.[88]

Accordingly, like the plaintiffs in *Boilermakers*, *City of Providence*, and *Sylebra*, I conclude that Plaintiff implicitly consented to the forum selection clauses in the Amendment and 2019 Note, which favor the Texas courts.

### 2. Plaintiff Has Failed To Otherwise Demonstrate That Enforcement Of Those Clauses Would Be Unreasonable Or Unjust.

I now turn to Plaintiff's argument that litigating the validity of the 2019 Note in Texas "would not only be an undue burden on Plaintiff, but on the judicial system as well."[89] Plaintiff contends that this Delaware action "likely cannot proceed without a determination of the validity of the Amendment and 2019 Note first," and

---

[87] *See City of Providence*, 99 A.3d at 240–42.

[88] *See id.* at 242.

[89] D.I. 37 at 44.

26

"[t]o force [Plaintiff] to take this claim to Texas for adjudication, thus stalling *these* proceedings indefinitely, would undermine the Court's ability to control its own docket."[90]

Plaintiff has failed to demonstrate that litigation in Texas would be unduly burdensome on him. "Mere inconvenience or additional expense is not the test of unreasonableness. In light of present day commercial realities, a forum clause should control absent a strong showing that it should be set aside."[91] Such a clause "is unreasonable only when its enforcement would, under the circumstances then existing, seriously impair the plaintiff's ability to pursue his cause of action."[92] Plaintiff has not argued that he would be unreasonably disadvantaged by litigating Count V in Texas. Plaintiff only cites delay and inconvenience in prosecuting the rest of his claims in Delaware. Those concerns fail to overcome the Amendment and 2019 Note's Texas forum selection clauses.

Plaintiff's concern for this Court's docket and judicial economy is also unpersuasive. "Delaware courts have held that, if there is a forum selection clause

---

[90] *Id.* (emphasis in original).

[91] *Ingres*, 8 A.3d at 1146 n.9 (quoting *HealthTrio, Inc. v. Margules*, 2007 WL 544156, at *3 (Del. Super. Jan. 16, 2007)).

[92] *Id.* (quoting *Elia Corp. v. Paul N. Howard Co.*, 391 A.2d 214, 216 (Del. Super. 1978)); *see also id.* (stating that the clause "should be respected as the responsible expression of the intention of the parties so long as there is no proof that its provisions will put one of the parties to an unreasonable disadvantage and thereby subvert the interests of justice" (quoting *Cent. Contr. Co. v. Md. Cas. Co.*, 367 F.2d 341, 345 (3d Cir. 1966))).

in a contract, even when venue where the suit is filed is proper, the court should decline to proceed when the parties freely agreed that litigation should be conducted in another forum."[93]  "So long as there is nothing unreasonable in such a provision there is no basis for viewing it as an affront to the judicial power, which must be stricken down."[94]  With these principles in mind, "judicial economy requires selection of the proper forum at the earliest possible opportunity."[95]

Plaintiff's lost luxury of adjudicating related claims in a single proceeding falls short of an affront to the judicial power.  Taking his claim to Texas may pose the risk that this action is stayed pending adjudication in that court.  But that risk of delay is insufficient to overcome this Court's obligation to afford forum selection clauses substantial weight.  Plaintiff has not shown that enforcement would be unreasonable, so Delaware law mandates that I dismiss Count V.

---

[93] *Id.* at 1145 n.8 (quoting *HealthTrio, Inc.*, 2007 WL 544156, at *3); *see also Outokumpu Eng'g Enters. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 733 (Del. Super. 1996) (explaining that forum selection clauses are entitled to "substantial weight"); *Elia Corp.*, 391 A.2d at 216 ("[E]ven though venue is proper where suit is filed and a court of competent jurisdiction exists, that court should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation.").

[94] *Ingres*, 8 A.3d at 1145 n.8 (quoting *Cent. Contr. Co.*, 367 F.2d at 345).

[95] *Simon*, 2000 WL 1597890, at *5 & n.22 (holding that a motion to dismiss based on a forum selection clause should be handled via Rule 12(b)(3) because "judicial economy requires selection of the proper forum at the earliest possible opportunity" (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995))).

### 3. Plaintiff Cannot Dislodge The Forum Selection Clauses By Attacking The Validity Of The Instruments Containing Them.

In the absence of a specific argument that the forum selection clauses are unreasonable as applied, Plaintiff alleges that the Amendment and 2019 Note are invalid, claiming that they were wrongfully procured by the vote of interested investors and tainted by suspect timing. Plaintiff argues that because Count V alleges that the Amendment and 2019 Note are invalid, this Court should not enforce their forum selection clauses.

But this argument is contrary to settled Delaware law. In *Carlyle Investment Management L.L.C. v. National Industries Group (Holding)*, this Court considered an argument that the agreement at issue was "void in its entirety, and that the forum selection clause is void too."[96] The Court rejected the argument, even if the agreement was, in fact, invalid:

---

[96] *Carlyle I*, 2012 WL 4847089, at *7.

> Under Delaware and federal law, a party cannot escape a valid forum selection clause . . . by arguing that the *underlying contract* was fraudulently induced or invalid for some reason unrelated to the forum selection . . . clause itself. Instead, the party must show that the forum selection clause *itself* is invalid. If the forum selection clause, standing alone, is found to be valid, the court that has jurisdiction over the dispute is to decide whether the contract is enforceable. Delaware has embraced the same approach because it sensibly prevents a party from making an end-run around an otherwise enforceable forum selection provision through an argument about the enforceability of other terms in the contract.[97]

The Delaware Supreme Court affirmed and adopted this reasoning on appeal: "[i]f the forum selection clause, standing alone, is found to be valid, the court having jurisdiction over the dispute is to decide whether the contract is enforceable or void *ab initio*."[98] Accordingly, this Court cannot adjudicate the overall validity of the Amendment and 2019 Note in the face of presumptively valid forum selection clauses therein, in the absence of facts clearly demonstrating that the enforcement of the clauses *themselves*, rather than the contracts as a whole, is unjust or unreasonable.

---

[97] *Id.* at *10 (alterations, footnotes, and internal quotation marks omitted) (quoting *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1248 (Del. Ch. 2010)).

[98] *Carlyle II*, 67 A.3d at 380; *accord Sylebra*, 2020 WL 5989473, at *13 ("Moreover, even if [plaintiff] had attempted to plead that the Reincorporation Merger was procured by fraud, that would be irrelevant in determining whether the Forum Selection Bylaw itself was procured by fraud. If the Forum Selection Bylaw is valid and enforceable in its own right, then whether there was fraud associated with the Reincorporation Merger . . . is a matter for the Nevada court to decide.").

Nor can this Court assess the adequacy of the vote resulting in the Amendment and 2019 Note. To warrant this Court's attention, the avoiding party's arguments must focus on the forum selection clause itself, not the transaction at large.[99] Absent well-pled facts explaining how Defendant and the Related Parties "have advanced their self-interests by having the claims in the [Amended] Complaint adjudicated in those courts instead of a Delaware court," Plaintiff's allegations that the Amendment and 2019 Note wrongfully depend on the vote of interested Related Parties do not foreclose enforcement of the forum selection clauses.[100]

Neither does the allegedly suspect timing of the vote, Amendment, and 2019 Note. Plaintiff has alleged that "the 2019 Note and Amendment were Rev's improper, eleventh hour attempt to erase its existing default under the Notes and

---

[99] *See City of Providence*, 99 A.3d at 240–41 (holding that enforcement of a forum selection clause is not unreasonable or inequitable *per se* because it was adopted in connection with a self-interested or improperly-motivated transaction, and that the avoiding party must demonstrate that enforcement is unreasonable because the alleged interestedness pertains to the forum selection clause itself); *see also Carlyle I*, 2012 WL 4847089, at *10 (holding that arguments regarding invalidity must go to the forum selection clause itself, not the agreement generally).

[100] *See City of Providence*, 99 A.3d at 241; *see also Sylebra*, 2020 WL 5989473, at *12 ("As the Defendants properly note, in determining whether a stockholder has met his burden to demonstrate unreasonableness in Delaware, the fundamental inquiry is whether the stockholder has alleged well-pled facts calling into question the integrity of the court chosen in the forum selection bylaw, or explained how the defendants have advanced their self-interests by having the claims adjudicated in those courts instead of a Delaware court. Sylebra has not alleged, likely because it cannot allege, either fact." (alterations and internal quotation marks omitted) (quoting *City of Providence*, 99 A.3d at 241)).

31

moot Plaintiff's pending claims."[101]  But *City of Providence* and *Sylebra* instruct that suspect timing in imposing a forum selection clause does not render it unenforceable. Facing a similar argument in *City of Providence*,[102] Chancellor Bouchard turned to the contractual scheme the plaintiff agreed to; an "essential part" of that contract was the presupposition that the board could adopt a binding forum selection bylaw without a stockholder vote.[103]  Thus, the stockholder should hold the "reasonable expectation" that the board could adopt such a bylaw at any time, subject to an as-applied challenge.[104]  *Sylebra* adopted the same logic:  "a stockholder in a Delaware corporation gives consent to be bound by current and future bylaws when it buys stock.  Whether or not the alleged wrongdoing comes before or after the adoption of a forum selection bylaw is irrelevant in determining the reasonableness or overall

---

[101] D.I. 37 at 43; *see also* Am. Compl. ¶ 48 ("Assuming the Amendment were legitimate, the Company would no longer be in default on Mack's Notes and the accompanying Security Agreements that form the basis for Mack's claims against Rev as stated in the original Verified Complaint."); *id.* ¶ 49 ("Though, by the stroke of a pen, Rev was attempting to extinguish Mack's right to recovery of his investment and moot several claims of this lawsuit, no notice was made to this Court (even though oral argument on Rev's motion to dismiss the extant complaint was scheduled for February 12, 2020).").

[102] *See City of Providence*, 99 A.3d at 238 ("Providence contends that the timing of the Board's adoption of the Forum Selection Bylaw—simultaneous with the adoption of the merger agreement—renders applying the bylaw to dismiss the Merger Complaint unreasonable."); *id.* at 240 ("Providence argues that enforcing the Forum Selection Bylaw against it would be unjust because the Board's adoption of the Bylaw, which occurred simultaneously with the announcement of the unfair [proposed merger], goes well beyond its reasonable expectations." (alterations and internal quotation marks omitted)).

[103] *Id.* at 240.

[104] *Id.*

enforceability of the bylaw."[105]  Plaintiff has failed to demonstrate that the suspect timing renders enforcement of the Amendment and 2019 Note's forum selection clauses unreasonable or unjust.  Nor has Plaintiff demonstrated that the timing of the vote and 2019 Note forecloses adjudication of his claims.

To paraphrase *Carlyle*, for now, what is important is that the parties agreed that issues arising from or related to the Amendment and 2019 Note would be determined by the Texas courts.[106]  The fact that Plaintiff may have a claim to invalidate the Amendment and 2019 Note does not render their forum selection provisions unenforceable by this Court.  That Defendant and the Related Parties adopted the Amendment and 2019 Note "on an allegedly 'cloudy' day . . . rather than on a 'clear' day is immaterial given the lack of any well-pled allegations" in Plaintiff's complaint demonstrating impropriety with respect to the chosen forum.[107] The subject forum selection clauses "merely regulate[] *where* the [noteholder] may file suit, not *whether* the [noteholder] may file suit or the kind of remedy that the [noteholder] may obtain."[108]  Accordingly, the conduct of Defendant and the Related Parties in approving the Amendment and 2019 Note "will not be absolved from

---

[105] *Sylebra*, 2020 WL 5989473, at *11 (footnotes omitted).

[106] *See Carlyle I*, 2012 WL 4847089, at *10.

[107] *City of Providence*, 99 A.3d at 241.

[108] *Id.* (quoting *Boilermakers*, 73 A.3d at 952).

33

judicial review."[109]  That review simply must occur in a Texas court.  Count V is dismissed.[110]

## B.    Count III Is Dismissed Pursuant To Rule 12(b)(3).

With respect to Count III, Defendant contends the claim must be dismissed in view of one of two forum selection clauses:  the Notes' forum selection clauses in favor of Texas, which are explicitly incorporated by reference in the Security Agreements; or the Subordination Agreement's forum selection clause in favor of California, as the Security Agreements are subject to the Subordination Agreement.

In response, Plaintiff raises two arguments.  Procedurally, Plaintiff asserts that Defendant waived any improper venue defense based on the Notes and Security Agreements' forum selection clauses because Defendant did not raise those specific clauses in support of the Initial Motion under Rule 12(b)(3).  Substantively, Plaintiff argues that Defendant cannot invoke the forum selection clause in the Subordination Agreement because Defendant was not a formal party to it.  Neither of Plaintiff's arguments preclude dismissal.  Count III cannot be adjudicated in Delaware.

---

[109] *Id.*

[110] Defendant also argued that Count V should be dismissed for failure to state a claim under Rule 12(b)(6).  In view of my determination under Rule 12(b)(3), I do not reach that issue.

34

### 1. Defendant Did Not Waive Its 12(b)(3) Defense And Therefore May Invoke The Forum Selection Provisions In The Notes And Security Agreements.

Defendant's Motion contends Count III must be dismissed based on the Texas forum selection clause in the Notes and incorporated by reference into the Security Agreements. Defendant did not present this argument in the Initial Motion; the Initial Motion sought dismissal based only on the Subordination Agreement's California forum selection clause, contending that "Plaintiff's claims in Count III related to breaches of the Security Agreements are all based upon the Subordination Agreement."[111] According to Plaintiff, because Count III of the Amended Complaint is identical to Count III of the Initial Complaint, Defendant could have asserted the Security Agreement and Notes' Texas forum selection clause as the basis for the Rule 12(b)(3) defense in its Initial Motion, but failed do so and therefore waived it.

At bottom, Plaintiff contends Court of Chancery Rule 12 requires a defendant's first motion to assert not just a Rule 12(b)(3) defense, but also all potential arguments in support, and forecloses the defendant from asserting new or more expansive arguments after an amended complaint has been filed. Plaintiff provides no authority for his view that failure to raise a specific ground for the

---

[111] D.I. 6 at 10 (internal quotation marks omitted).

defense constitutes waiver of that ground. Nor has the Court found any. Rather, Rule 12's plain language, its underlying policy, and the practicalities of pleading and motion practice lead to the conclusion that Defendant did not waive its Rule 12(b)(3) defense based on the Texas forum selection clause.

"[U]nder Delaware law, a waiver is found where a party had actual or constructive notice of a known right, and that the party voluntarily and intentionally relinquished that known right."[112] Court of Chancery Rule 12 codifies when a defendant waives certain defenses. The plain language of Rule 12 deals with raising and waiving the *defense* generally. Rule 12 does not mention, let alone mandate, that the movant raise every *specific ground* for the defense or waive those arguments.

Under Rule 12(h)(1), the improper venue defense is waived if it is not raised in the initial motion or responsive pleading. That Rule provides, in pertinent part:

> A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in paragraph (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.[113]

Rule 12(g) in turn states:

---

[112] *Ashall Homes Ltd.*, 992 A.2d at 1247 (alterations, footnotes, and internal quotation marks omitted) (quoting *Danvir Corp. v. City of Wilm.*, 2008 WL 4560903, at *7 (Del. Ch. Oct. 6, 2008)); *see also E. Hedinger AG v. Brainwave Sci., LLC*, 363 F. Supp. 3d 499, 506 (D. Del. 2019) ("Waiver is the intentional relinquishment or abandonment of a known right." (alterations and internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

[113] Ct. Ch. R. 12(h)(1).

If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on any of the defenses or objections so omitted except as provided in subparagraph (h)(2) hereof on any of the grounds there stated.[114]

Under these provisions, Rule 12 requires an improper venue defense be raised by a timely Rule 12 motion or, if no motion is filed, in the first responsive pleading.[115] The defendant "[i]s required to expressly raise the defense of lack [venue] no later than her answer" in order to give the opposing party "sufficient notice of the Rule 12(b)([3]) defense."[116] If the defendant "fail[s] to expressly raise a lack of [venue] defense in a timely manner," then the defense is waived.[117]

In applying these provisions, it is important to keep in mind that they "are designed to prevent a litigant from using a series of motions as a dilatory tactic,"[118]

---

[114] Ct. Ch. R. 12(g).

[115] *Plummer v. Sherman*, 861 A.2d 1238, 1243–44 (Del. 2004); *see also Jones v. Peek*, 2009 WL 3334913, at *3 (Del. Super. Oct. 14, 2009) ("Rule 12(h) imposes a higher sanction with respect to the failure to raise the specific defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. If a party filed a pre-answer motion but fails to raise one of the defenses enumerated above, the party waives the omitted defense and cannot subsequently raise it in his answer or otherwise." (emphasis omitted) (quoting *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1983))).

[116] *Plummer*, 861 A.2d at 1244.

[117] *Id.*

[118] *Id.* at 1243.

to "direct[] a party to take timely action on answers or motions,"[119] and "to expedite litigation and encourage disputes to be resolved on their merits."[120] Failure to timely raise the defense results in waiver because delay often results in prejudice, and "[p]rejudice is the touchstone for determining whether [a] right . . . has been waived."[121] The Court therefore considers whether the opposing party was on notice of the defense and whether the opposing party had sufficient opportunity to respond.[122]

---

[119] *Jones*, 2009 WL 3334913, at *2.

[120] *Tuckman v. Aerosonic Corp.*, 394 A.2d 226, 232 (Del. Ch. 1978) ("The purpose for [Rule 12(h)] is to expedite litigation and encourage disputes to be resolved on their merits."); *see also Myers*, 695 F.2d at 720–21 (stating that Rule 12 is crafted "to afford an easy method for the presentation of defenses but at the same time prevent their use for purposes of delay," and that "[t]he [analogous] federal rules single out four defenses which must be raised by the defendant's initial responsive pleading in order to be preserved," which "reflects a strong policy against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff in his litigation, namely . . . his choice of forum for the action," and "benefits the court as well as the opposing party by requiring a litigant to raise certain technical objections, the basis of which should be apparent from the outset of the action, before the litigation has moved forward").

[121] *E. Hedinger AG*, 363 F. Supp. 3d at 506 (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir. 1992)) (analyzing whether defendant waived its right to invoke an arbitration clause).

[122] *Cf. Myers*, 695 F.2d at 720–21 (holding that defendant could not "amend" its pleading to broaden its lack of personal jurisdiction defense raised in an initial motion to dismiss because "the defense of personal jurisdiction was not raised before the district court until *after* argument and *after* the court rendered its decision on the motion," and suggesting that the result may have been different if "a pre-answer motion was amended or supplemented *prior* to argument before the district court" so as to afford the opponent an opportunity to respond (emphasis in original)).

This Court's briefing rules and practices mitigate the risk of unfair surprise from new or unreasonably expanded arguments.  It is well settled that arguments that were not raised in an opening brief and are beyond the scope of matter asserted in a responsive brief are deemed waived.[123]  Thus, considering this common law principle and Rule 12, on a typical motion to dismiss, the defendant must raise the improper venue defense to preserve it and avoid waiver under Rule 12.  The defendant then bears the burden of asserting all grounds supporting the defense in his opening brief, filed either contemporaneously with or shortly after the motion.  At that point, substantive arguments not briefed are deemed waived.

Synthesizing the plain text of Rule 12, its policies, and the coordinating common law on waiver of arguments, I conclude that because Defendant timely and "expressly raise[d]" its 12(b)(3) defense in response to the Initial Complaint and again in response to the Amended Complaint, Defendant gave Plaintiff "sufficient

---

[123] *See, e.g.*, *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (holding that plaintiff waived arguments by failing to raise them in its opening brief); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993) (explaining that "[t]he failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim on appeal" (footnote omitted)); *Franklin Balance Sheet Inv. Fund v. Crowley*, 2006 WL 3095952, at *4 (Del. Ch. Oct. 19, 2006) (explaining that, "under the briefing rules, a party is obliged in its motion and opening brief to set forth all of the grounds, authorities and arguments supporting its motion" and "should not hold matters in reserve for reply briefs," which "should consist of material necessary to respond to the answering brief"); *In re Asbestos Litig.*, 2007 WL 2410879, at *4 (Del. Super. Aug. 27, 2007) (noting that it is "well-settled in Delaware" that a legal issue not raised in an opening brief is generally deemed waived and "[m]oving parties must provide adequate factual and legal support for their positions in their moving papers in order to put the opposing parties and the court on notice of the issues to be decided").

notice" of the defense and the defense is preserved.[124] Defendant's Initial Motion, like the instant Motion, raised a 12(b)(3) defense against Count III. Specifically, Defendant argued that Count III must be dismissed in view of the Subordination Agreement's forum selection clause. Thereafter, the parties fully briefed the issue. Plaintiff had ample opportunity to respond to Defendant's specific Rule 12(b)(3) arguments on the Initial Motion. If the Court had adjudicated the Initial Motion, Defendant would have been held to those arguments alone and would not have been permitted to invoke the forum selection provisions of the Security Agreements and Notes.

But the Court did not adjudicate the Initial Motion because Plaintiff elected to file the Amended Complaint. The Amended Complaint renewed Defendant's opportunity to raise the 12(b)(3) defense, along with its supporting arguments.[125] Defendant repeated its 12(b)(3) defense and, perhaps perceiving that it had missed an opportunity on the Initial Motion, asserted an additional argument in support: the Security Agreements' forum selection provision, which explicitly incorporates the Notes' forum selection clauses by reference. Defendant gave Plaintiff "sufficient

---

[124] *Plummer*, 861 A.2d at 1244.

[125] *Cf. Dunfee v. KGL Hldgs. Riverfront, LLC*, 2018 WL 5619705, at *1–2 (Del. Super. Ct. Oct. 30, 2018) (considering whether a "successive Rule 12(b)(6) motion" raising new ground for the motion was "a violation of Rule 12(g) and Rule 12(h)(2)," concluding it was, but stating that if plaintiff failed an amended complaint, then defendant "shall be permitted to file another motion to dismiss pursuant to 12(b)(6) regarding those amended complaints" inclusive of the grounds raised in the improper motion).

notice" of the defense and its supporting basis.[126] Plaintiff had every opportunity to respond in briefing and at argument, and did so in full voice.

Nothing in Rule 12's plain language foreclosed Defendant's course of conduct. In Defendant's Initial Motion, Defendant fulfilled its "duty" "to appear and raise his objections" in a timely manner under Rule 12.[127] Defendant did not waive its Rule 12(b)(3) defense by refining it after Plaintiff filed his Amended Complaint. Plaintiff has not argued nor demonstrated that Defendant used motion practice or other presentation of the Rule 12 defenses for purposes of delay or as a dilatory tactic.[128] And most importantly, Plaintiff has failed to articulate how he has been prejudiced by Defendant's decision to assert the Security Agreements' forum selection provision as a basis for the Rule 12(b)(3) defense. I cannot discern any such prejudice. Defendant did not waive its grounds for its Rule 12(b)(3) defense by timely raising them and fully briefing them in response to the Amended Complaint.

---

[126] *Plummer*, 861 A.2d at 1244.

[127] *Jones*, 2009 WL 3334913, at *2 (quoting *U.S. ex rel. Combustion Sys. Sales, Inc. v. E. Metal Prod. & Fabricators, Inc.*, 112 F.R.D. 685, 686 (M.D.N.C. 1986)).

[128] *See Plummer*, 861 A.2d at 1243; *Myers*, 695 F.2d at 720.

## 2. Multiple Forum Selection Clauses Require Dismissal of Count III.

Count III alleges that Defendant breached the Security Agreements. Defendant argues that Count III must be dismissed because the Security Agreements expressly adopt and incorporate the Notes' forum selection clauses, which provide for exclusive jurisdiction in the U.S. District Court for the Western District of Texas in Austin, Texas or the courts of the State of Texas sitting in Travis County.[129] Defendant alternatively argues that Count III must be dismissed because the Security Agreements and their corresponding Notes are expressly subject to the terms and conditions of the Subordination Agreement, which contains a forum selection clause subjecting disputes arising from and related to it "to the exclusive jurisdiction of the state and federal courts located in Santa Clara County, California in any action, suit, or proceeding of any kind, against it which arises out of or by reason of this Agreement."[130] Those clauses "are presumptively valid and should be specifically enforced unless the resisting party clearly show[s] that enforcement would be

---

[129] *See* Ex. B § 10(J); Ex. E § 10(J); Ex. F § 11(J); Ex. G § 10(J); Ex. H § 11(J); Ex. I § 10(J).

[130] Ex. D § 15.

unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching."[131]

Plaintiff has not argued or demonstrated that enforcing either the Texas or California forum selection provision would be unreasonable or that those provisions were procured by fraud or overreaching. And nothing suggests that enforcement "would place [Plaintiff] at an unfair disadvantage or otherwise deny it its day in court."[132] Thus, the forum selection provisions divest this Court of jurisdiction to hear Count III.

Plaintiff does argue that Defendant cannot invoke the Subordination Agreement's forum selection clause because, although Defendant is named as "Borrower" under that agreement and signed it, Defendant is not a formal party to the agreement "by and between the [C]reditors . . . and Silicon Valley Bank."[133] Evaluating this argument would require this Court to substantively interpret the Subordination Agreement, even though its forum selection clause clearly gives California courts exclusive jurisdiction over that task.[134] This Court would be

---

[131] *Sylebra*, 2020 WL 5989473, at \*10 (alterations in original) (quoting *Ingres*, 8 A.3d at 1146).

[132] *Id.* at \*11 (alterations and internal quotation marks omitted) (quoting *Cap. Gp. Cos., Inc.*, 2004 WL 2521295, at \*6).

[133] Ex. D at 1.

[134] The Subordination Agreement is expressly governed by California law. Ex. D. § 15. "When a contract contains a forum selection clause, this court will interpret the forum selection clause in accordance with the law chosen to govern the contract." *Ashall Homes*

required to consider the import of Defendant being named as "Borrower" under the Subordination Agreement, its provisions discussing the parties' rights and obligations with respect to Borrower, and the effect of Borrower's executing the Subordination Agreement.[135]    Considering these issues and interpreting the

---

*Ltd.*, 992 A.2d at 1245.  "It is telling, however, that neither party has cited to [California] law—the law for which they bargained—in its briefing on this motion." *Id.* at 1246.  "That illustrates a basic problem with adjudicating this dispute in Delaware:  this court does not have—and cannot pretend to have—the same knowledge of [California] law . . . as the courts of [California]." *Id.*

[135] A California court very well might decide that the Defendant could invoke the Subordination Agreement's forum selection clause against Plaintiff.  Under Delaware law, which is consistent with the laws of many other jurisdictions, a non-signatory has standing to invoke and enforce a forum selection clause where it is "closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *Ashall Homes Ltd.*, 992 A.2d at 1249 (quoting *BNY AIS Nominees Ltd. v. Quan,* 609 F. Supp. 2d 269, 275 (D. Conn. 2009), and citing *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (holding that where the alleged conduct of the non-parties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses), and then citing *Ishimaru v. Fung*, 2005 WL 2899680, at *17–18 (Del. Ch. Oct. 26, 2005) (holding that a non-signatory subsidiary could enforce the arbitration provision in an agreement executed by its parent company), among other cases).  A non-signatory is closely related if "(1) [the party] receives a direct benefit from the agreement; or (2) it was foreseeable that [the party] would be bound by the agreement." *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *4 (Del. Ch. Sept. 18, 2019) (quoting *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009)).  "In evaluating whether a non-signatory received a direct benefit for the purpose of the closely-related test, Delaware courts have deemed both pecuniary and non-pecuniary benefits sufficient to satisfy the test." *Id.*  "[T]he foreseeability inquiry seeks to foreclose an end-run around an otherwise enforceable forum selection provision.  On this basis, cases have applied the foreseeability inquiry to bind a range of transaction participants who did not sign the relevant agreement." *Id.* at *5 (alterations, footnotes, and internal quotation marks omitted) (first quoting *Ashall Homes Ltd.*, 992 A.2d at 1248, and then quoting *Weygandt*, 2009 WL 1351808, at *5 n.26).  It appears likely that under Delaware law, Defendant would satisfy both the direct-benefit and foreseeability tests such that it would have standing to invoke the Subordination Agreement's forum selection clause although it was not a formal party to that agreement.

Subordination Agreement would strip the parties of their bargain and improperly impose this Court on the power of the chosen forum. "[A]t this stage in the analysis—where this court is to decide whether it can exercise jurisdiction over a dispute, and not to decide the outcome of the dispute itself—coming to a conclusion as to whether" Defendant may invoke the Subordination Agreement would be improper, as that analysis exceeds a strictly jurisdictional determination and requires more extensive contractual interpretation.[136] Plaintiff's argument must be rejected because the forum selection clause tasks California courts with interpreting the Subordination Agreement.[137]

My analysis stops at concluding that Delaware is not the place for Count III. I do not reach where that claim should be heard. Plaintiff's presentation of Count III to this Court is thwarted by two dueling mandatory forum selection clauses providing for exclusive venue in other jurisdictions.[138] Because the Security Agreements' "Governing Law" provision explicitly incorporates the Notes' forum selection clauses,[139] that task is arguably the "exclusive" province of Texas courts.[140]

---

[136] *See Ashall Homes Ltd.*, 992 A.2d at 1248.

[137] *See id.* at 1247.

[138] The parties have not argued that any of the forum selection clauses at play are permissive rather than mandatory.

[139] Ex. C § 17.

[140] *E.g.*, Ex. B § 10(J); Ex. E § 10(J); Ex. F § 11(J); Ex. G § 10(J); Ex. H § 11(J); Ex. I § 10(J).

And in the same breath, because the Security Agreements are "subject to" the Subordination Agreement,[141] that task is arguably the "exclusive" province of California courts.[142]

"For a forum selection clause to be strictly binding, the parties must use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action."[143] "If the contractual language is not crystalline, a court will not interpret a forum selection clause to indicate the parties intended to make jurisdiction exclusive."[144]

Delaware cases interpreting conflicting forum selection clauses generally involve one in favor of Delaware and the other in favor of a foreign court. And in those instances, the Court has determined that the conflicting language is not "crystalline" in indicating exclusive jurisdiction in a non-Delaware court.[145] This

---

[141] Ex. C at 1.

[142] Ex. D § 15.

[143] *Troy Corp.*, 2007 WL 949441, at *2 (internal quotation marks omitted) (quoting *Prestancia Mgmt. Gp., Inc. v. Va. Heritage Found. II, LLC*, 2005 WL 1364616, at *7 (Del. Ch. May 27, 2005)).

[144] *Id.* (internal quotation marks omitted) (quoting *Prestancia Mgmt. Gp., Inc.*, 2005 WL 1364616, at *7); *accord Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *11 (Del. Ch. Dec. 7, 2012).

[145] *Troy Corp.*, 2007 WL 949441, at *2.

case is a variation on that theme: the Court is faced with conflicting, mandatory forum selection clauses, but neither regards Delaware as a proper venue.

The parties clearly and expressly contracted to select a venue other than Delaware. All agreements that allegedly bear on Count III—the Notes, Security Agreements, and Subordination Agreement—establish the parties' common understanding that the claim cannot be heard in Delaware, and a "reasonable person in the position of either party would have no expectations inconsistent with the contract language."[146] In this case, the language of the relevant agreements is "crystalline" that Count III is the province of a foreign court.[147]

Accordingly, any conflict between the forum selection clauses in the Security Agreements and Notes on the one hand, and the forum selection clause in the Subordination Agreement that the Security Agreements and Notes incorporate on the other, is not for this Court to resolve. This Court would have to interpret the Subordination Agreement together with the Security Agreements and Notes to reconcile their conflicting forum selection clauses, but that interpretation has been assigned to other courts.[148] The parties must ask a court facially designated to hear

---

[146] *Duff*, 2012 WL 6096586, at *11 (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

[147] *Troy Corp.*, 2007 WL 949441, at *2; *Duff*, 2012 WL 6096586, at *11.

[148] *See Duff*, 2012 WL 6096586, at *12 ("Delaware law holds that where a contract incorporates another contract by reference, the two contracts will be read together as a single contract.").

Count III to determine which forum selection clause governs the dispute. Doing so "give[s] effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation."[149] Accordingly, Count III is dismissed.

## III. CONCLUSION

The Motion is **GRANTED** and Counts III and V of the Amended Complaint are **DISMISSED**. The parties shall submit an implementing order within twenty days of this decision.

---

[149] *Troy Corp.*, 2007 WL 949441, at *2 (quoting *Prestancia Mgmt. Gp., Inc*, 2005 WL 1364616, at *7).